IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANGIE ALICIA DEMBY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:21-cv-00809-SRF |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION[2]

Plaintiff Angie Alicia Demby ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) on June 2, 2021, against the defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ("Commissioner"). (D.I. 2) Plaintiff seeks judicial review of Commissioner's October 5, 2020, final decision denying Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434, 1381-1383f. Currently before the court are cross-motions for summary judgment filed by Plaintiff and Commissioner.[3] (D.I. 12; D.I. 14) For the reasons set forth below, Plaintiff's motion for summary judgment (D.I. 12) is DENIED and Commissioner's cross-motion for summary judgment (D.I. 14) is GRANTED.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted as Defendant in place of Andrew Saul.
[2] The parties consented to the jurisdiction of a magistrate judge to conduct all proceedings in this matter through final judgment, and the case was assigned to the undersigned judicial officer on January 12, 2022. (D.I. 18)
[3] The briefing for the present motions is as follows: Plaintiff's opening brief (D.I. 13), Commissioner's combined opening brief in support of the motion for summary judgment and answering brief in opposition to Plaintiff's motion (D.I. 15), and Plaintiff's reply brief. (D.I. 16)

## I. BACKGROUND

### A. Procedural History

Plaintiff filed applications for DIB and SSI on September 24, 2018, alleging a disability onset date of May 1, 2015, due to post-traumatic stress disorder ("PTSD"), asthma, high blood pressure, insomnia, and depression. (D.I. 9 at 127) Plaintiff subsequently amended her disability onset date to July 31, 2018. (*Id.* at 23, 54) Plaintiff's claims were denied initially on May 8, 2019, as well as upon reconsideration on June 25, 2019. (*Id.* at 125-144, 165-181) At Plaintiff's request, an administrative law judge ("ALJ") held a hearing on July 28, 2020. (*Id.* at 44-80, 228-29) The ALJ issued an unfavorable decision on October 5, 2020, finding Plaintiff was not disabled under the Act because she could perform a reduced range of light work. (*Id.* at 23-36) The Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of Commissioner. (*Id.* at 9-11)

On June 2, 2021, Plaintiff brought this civil action challenging the ALJ's decision. (D.I. 2) Plaintiff filed her motion for summary judgment on November 16, 2021 (D.I. 12), and Commissioner filed a cross-motion on December 16, 2021 (D.I. 14). Briefing is now complete on the pending motions.

### B. Medical History

#### 1. Medical Evidence

Plaintiff was forty-three years old on her alleged disability onset date. (D.I. 9 at 34) Plaintiff has an eleventh-grade education and does not have a GED. (*Id.* at 56) The ALJ found Plaintiff has past relevant work as a fast-food manager, data entry clerk, home health aide, and CNA. (*Id.* at 34) The ALJ found Plaintiff has the following severe impairments: asthma, migraine, obesity, PTSD, and major depressive disorder. (*Id.* at 26)

Between September 24, 2019, and February 7, 2020, Plaintiff presented six times to Licensed Professional Counselor Associate ("LPCA") LaTonia Curtiss, stating she wanted to learn how to cope with depression and grief. (D.I. 9 at 732-33, 738, 743, 752-53, 758-59) Plaintiff reported issues with concentration, sleep, motivation, and patience. (*Id.*) Curtiss generally reported Plaintiff "appeared to be calm…smiled and laughed throughout session…[and] spoke with 'normal tone and cadence[,]'" but at times appeared to be in an anxious, irritated or depressed mood." (*Id.* at 733, 743, 752) Curtiss counseled Plaintiff about the importance of attending medical and therapy appointments and noted Plaintiff appeared receptive to exploring current stressors and setting healthy boundaries. (*Id.* at 733, 758) On December 13, 2019, Curtiss noted Plaintiff appeared to be in an "anxious somewhat irritated mood" during the session. (*Id.* at 743)

From October 18, 2019 to January 30, 2019, Plaintiff met with Psychiatric-Mental Health Nurse Practitioner-Board Certified ("PMNB-BC") Nikia Ritchie five times. (D.I. 9 at 734-37, 739-42, 744-51, 745-57) The mental status examination performed on October 18, 2019, indicated Plaintiff had an overall depressed, anxious/fearful, and tearful mood, flattened affect, but was well oriented with normal eye contact, speech, insight, and judgment. (*Id.* at 734-37) Plaintiff's status was relatively similar on subsequent visits. (*Id.* at 739-42, 744-47) On January 2, 2020, Ritchie reported Plaintiff mentioned during their meeting she had been "feeling suicidal 'a couple weeks ago'" and Ritchie spoke with Plaintiff about the "[i]nitiation of a Suicide Prevention Journal." (*Id.* at 748, 751) On January 30, 2020, Plaintiff returned to Ritchie where it was noted in her chart "she ha[d] not been suicidal since we last spoke" and during their meeting there was an "[u]nderstanding of everyday activities and social situations without major deficits." (*Id.* at 754, 756)

On March 26, 2020, Plaintiff presented to Registered Nurse ("RN") Sandra Cooper, who noted Plaintiff "report[ed] she had been having a difficult time dealing with her [sons'] deaths...stat[ing] it has been overwhelming dealing with her past traumas and all the flashbacks of memories." (D.I. 9 at 988) The following day, Plaintiff returned to RN Cooper, "present[ing] to therapy due to increased anxiety, depression, PTSD, Insomnia and Intermittent Explovise [*sic*] Disorder and stressors associated with past traumas." (*Id.* at 990) Later, Plaintiff presented to RN Cooper on April 14, 2020, when it was noted Plaintiff "gained awareness that her negative thinking keeps her in bed and unable to be productive in her daily life. The client recognizes her need for self-evaluation in order to start living a healthy life." (*Id.* at 1000) Plaintiff regularly met with Cooper until August 2020 to discuss her daily life and stressors. (*Id.* at 1001-1052)

On April 8, 2020, Plaintiff visited RN Darlene Deel who noted "[p]atient also stated that she has increased anxiety and crying spells..." and "[a]sked if [the doctor] would order anything." (D.I. 9 at 934) On July 10, 2020, Plaintiff was treated by RN Sidra Dean who noted "[p]atient stated that she has a history of depression...also became tearful during visit." (*Id.* at 886) On August 13, 2020, Plaintiff saw Adult Gerontology Nurse Practitioner ("AGNP") Jean Fatima Ryals who noted Plaintiff stated "[s]he has 'good days and bad days'" and "[o]n bad days, she reports difficulty getting out of the bed due to low energy, sad mood, increased anxiety and decreased motivation." (*Id.* at 1060) Ryals also noted Plaintiff "has intermittent PTSD symptoms, flashbacks, and irritability." (*Id.*)

### 2. Medical Opinions

On January 25, 2017, Dr. Jill Mackey, following a consultation, answered whether Plaintiff's symptoms were "severe enough to interfere with the attention & concentration required to perform simple work-related tasks" as "frequently." (D.I. 9 at 852) She also noted

4

Plaintiff required the ability to lay down or recline more frequently than normally expected in an 8-hour work day, she could walk two city blocks, and could "occasionally" carry 10 pounds. (*Id.*) Dr. Mackey also wrote Plaintiff would likely be absent more than four times a month from work due to her impairments. (*Id.*)

Licensed Professional Counselor of Mental Health (LPCMH) Bonnie S. Gladu saw Plaintiff on January 27, 2017. (D.I. 9 at 857) At this mental health evaluation Gladu noted Plaintiff had little to no limitations with regards to her "ability to interact appropriately with the general public," "ability to ask simple questions or request assistance," and "ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." (*Id.* at 855-56) Gladu also found Plaintiff had no limitations "to be aware of normal hazards and take appropriate precautions" or "to set realistic goals or make plans independently of others." (*Id.* at 857)

On October 25, 2018, Dr. C. Craig Farmer conducted a psychological evaluation of Plaintiff and noted "[s]he was unable to count 3s making three errors…she was unable to subtract 82 from 100 stating '72' she appears to be functioning significantly below average. Her insight and her emotional status is adequate." (D.I. 9 at 616) Also noted in Dr. Farmer's report was Plaintiff "states that she is able to cook and clean, but often is affected by anergia and lack of motivation…[s]he states that she is able to bathe herself, take care of hygiene needs, dress herself, drive an hour, and handle her own finances." (*Id.*) Following the consultation, Dr. Farmer diagnosed Plaintiff with "[m]ajor depressive disorder- recurrent – severe…[p]anic disorder…" (*Id.*) On March 30, 2019, Dr. Farmer saw Plaintiff again and noted "she is not overtly anxious. She complains of having 2-3 panic attacks weekly…[t]hought processes appear clear and there is no evidence of psychosis." (*Id.* at 659) Dr. Farmer adjusted his diagnosis of

5

Plaintiff, marking her major depressive disorder as "moderate" instead of "severe" but kept Plaintiff's panic disorder diagnosis. (*Id.* at 660) He also wrote "[h]er ability to tolerate the stress and pressure associated with day-to-day work activity is limited for the same reasons....[s]he is in need of continued medical treatment and mental health treatment." (*Id.*)

Plaintiff was also evaluated by State Agency Medical consultant Dr. Dakota Cox on March 22, 2019, at which point Dr. Cox noted Plaintiff "'tries to stay sane' on a typical day…DOES go to church and DOES go to doctor appts…can walk 2.5 miles before needing 5 minutes to rest…" and "…allegations are partially c/w the objective evidence." (D.I. 9 at 139)

State Agency Doctor of Psychology (Psy.D.) David Tessler evaluated Plaintiff's mental capacity on April 26, 2019, and wrote "[t]he claimant does have the ability to understand and remember at least simple instructions and work procedures." (D.I. 9 at 140) Psy.D. Tessler also wrote in his report that Plaintiff is "[m]oderately limited" in her "ability to carry out detailed instructions," "to maintain attention and concentration for extended periods," and "to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." (*Id.*) Additionally, Psy.D. Tessler found Plaintiff "[m]oderately limited" regarding her ability to work with others or in close proximity to them without distracting them, to engage with the public, cooperating with coworkers or peers, and to accept critical feedback. (*Id.* at 140-41) Dr. Tessler stated, however, "[claimant] is mentally able to adapt to most changes and task demands on a sustained basis, avoid hazards, and travel independently." (*Id.*)

Plaintiff visited Dr. Margaret Barham on June 21, 2019, where the doctor determined Plaintiff was "highly functional" for her daily activities like cleaning and grocery shopping. (D.I. 9 at 173) Dr. Barham also notes "Depressive/anxiety-related symptoms appear severe however [Medical Evidence of Record] does not support limitations beyond the scope of

6

[Simple, Routine, Repetitive Tasks]. ALJ decision in file considered where consistent with the body of evidence." (*Id.*) On June 24, 2019, Dr. Todd Rowland also evaluated Plaintiff and found similarly to Dr. Barham in that Plaintiff was "highly functional" and, despite alleged asthma issues, he found the file consistent with the ALJ's previous decision. (*Id.* at 176-77)

Later, on May 20, 2020, Dr. Vani Singh evaluated Plaintiff over the phone. In that visit the physician noted Plaintiff has not worked since July 31, 2019, due to mental health and not physical disability. (D.I. 9 at 912)

### C. Hearing Before the ALJ

#### 1. Plaintiff's Testimony

At the administrative hearing on July 28, 2020, Plaintiff testified she has an eleventh-grade education and started, but did not complete, a GED program due to stress, inability to cope with tasks, and concentration issues. (D.I. 9 at 56) Prior to her amended disability onset date of July 31, 2018, she worked as an accounting technician at Goodwill, a shift manager at a fast-food restaurant, a certified nursing assistant ("CNA") at a nursing facility, a fast-food restaurant manager for approximately a year, and a home health aide. (*Id.* at 56-61) She stated many of these positions required lifting anywhere from ten to more than one hundred pounds. (*Id.*)

Plaintiff testified she has been in counseling since before 2015, but her PTSD worsened after her sons' deaths in 2015 and 2019. (D.I. 9 at 61-63) She explained she suffers from depression, anxiety, concentration and memory issues, nightmares, outbursts, and suicidal thoughts. (*Id.*) Most outbursts occur with people she knows, but she sometimes cannot remember them and has on one occasion hit a wall and suffered hand pain afterwards. (*Id.* at 64-65) She explained she does not socialize because she feels agitated, fearful, and "on-edge"

7

around people. (*Id.* at 64-65, 74) She noted she is on medication for nightmares and anxiety. (*Id.* at 63)

Additionally, Plaintiff testified she lives with a friend who handles the household chores, such as cleaning, cooking, and grocery shopping. (D.I. 9 at 55, 73-74) Plaintiff explained she does laundry and prepares her own simple meals, but her daughter often assists with laundry, delivers meals, and reminds her to take her medications. (*Id.* at 63, 74) Plaintiff has a driver's license, but testified her children drive her to doctor's appointments. (*Id.* at 55, 63)

### 2. Vocational Expert Testimony Before the ALJ

At the administrative hearing on July 28, 2020, the ALJ posed the following hypothetical to the vocational expert ("VE"):

> [A]ssume a hypothetical individual of the claimant's age, education, and the past work that you identified. Assume that this individual could perform a range of light work. But would be unable to be exposed to hazards defined as climbing ropes, ladders, or scaffolds, using dangerous moving machinery, or being exposed to unprotected heights. This individual could occasionally climb ramps and stairs and could frequently balance, stoop, kneel, crouch and crawl as defined by the [Selected Characteristics of Occupations]. This individual could occasionally be exposed to extreme heat, extreme cold, humidity, fumes, odors, dust, gases, and poor ventilation. The individual would be limited to simple routine and repetitive work but not at a production pace. They could maintain attention and concentration for periods of up to two hours and repeat throughout the workday after customary breaks. The individual could have no more than incidental and infrequent contact with the general public but could occasionally interact with coworkers and supervisors as long as their [*sic*] not required to perform tasks where they would have to work in tandem with coworkers to complete job responsibilities. They could make simple work decisions in a stable work environment which could be defined as very little change in work setting or work process. Could an individual with these limitations perform the claimant's past relevant work?

(D.I. 9 at 76-77) In response to the ALJ's hypothetical, the VE testified that such a hypothetical individual would not be able to perform Plaintiff's past work as a manager, data entry clerk, home health aide, and CNA. (*Id.* at 75-77) However, the VE indicated that such a hypothetical

8

individual could perform work at the light exertional level as an inspector, router, or assembler of small products. (*Id.* at 77)

Plaintiff's counsel then asked the VE to consider the hypothetical individual with less than occasional ability to tolerate normal workday stresses and less than occasional ability to interact appropriately with coworkers and supervisors. (D.I. 9 at 78) The VE explained that such an individual would not be able to maintain employment. (*Id.*) The VE testified a hypothetical individual could not be absent three or more days per month for the types of jobs listed. (*Id.*)

### D.   The ALJ's Findings

Based on the medical evidence in the record and the testimony by Plaintiff and the VE, the ALJ determined Plaintiff was not disabled under the Act for the relevant time period from the July 31, 2018, amended disability onset date, through the July 28, 2020, hearing date. (D.I. 9 at 23-36) The ALJ found, in pertinent part:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since July 31, 2018, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: asthma, migraine, obesity, posttraumatic stress disorder, and major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot be exposed to hazards defined as climbing ropes, ladders, or scaffolds, using dangerous moving machinery or being exposed to unprotected heights. The claimant can occasionally climb ramps/stairs.

9

>  She can frequently balance, stoop, kneel, crawl, and crouch as defined by the *Selected Characteristics of Occupations*. The claimant can occasionally be exposed to extreme heat, extreme cold, humidity, fumes, odors, dust, gases, and poor ventilation. The claimant is limited to simple, routine, and repetitive work, but not at a production pace. The claimant can have no more than incidental and infrequent contact with the general public. She can occasionally interact with coworkers and supervisors, but cannot perform tasks that would require her to work in tandem with coworkers to complete job responsibilities. The claimant can make simple work decisions in a stable work environment, defined as very little change in work setting or work process.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was … 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has a limited education (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from July 31, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(*Id.* at 26-35)

## II. STANDARD OF REVIEW

Judicial review of the ALJ's decision is limited to determining whether substantial evidence supports the decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence means enough relevant evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 687 (3d Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). When applying the

10

substantial evidence standard, the court "looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The threshold for satisfying the substantial evidence standard is "not high[,]" requiring "'more than a mere scintilla'" of evidence. *Biestek*, 139 S. Ct. at 1154. Additionally, when reviewing the record for substantial evidence, "we are mindful that we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

### III. DISCUSSION

#### A. Disability Determination Process

Title II of the Act affords insurance benefits to "people who contributed to the program and who have a disability." *Pearson*, 839 F.App'x at 687; *see* 42 U.S.C. § 423(a)(1). A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is only disabled if the impairments are so severe that they preclude a return to previous work or engagement in any other kind of substantial gainful work existing in the national economy. *Id.* at § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003). To qualify for disability insurance benefits, a claimant must establish disability prior to the date last insured. 20 C.F.R. § 404.131 (2016); *Zirnsak*, 777 F.3d at 611-12. Title XVI of the Act "provides for the payment of disability benefits to indigent persons under the Supplemental Security Income program." *Bowen v. Yucket*, 482 U.S. 137, 140 (1987); *see* 42 U.S.C. § 1381(a).

The Commissioner must perform a five-step analysis to determine whether a person is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If the Commissioner makes a finding of disability or non-disability at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)(i). At step one, the Commissioner determines whether the claimant is engaged in any substantial gainful activity. *See id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a severe combination of impairments. *See id.* at §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant's impairments are severe, at step three, the Commissioner compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See id.* at §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches a listed impairment, the claimant is presumed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See id.* at §§ 404.1520(e), 416.920(e).

At step four, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to perform past relevant work. *See id.* at §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Plummer*, 186 F.3d at 428. "A claimant's RFC measures 'the most she can do despite her limitations.'" *Zirnsak*, 777 F.3d at 611 (quoting 20 C.F.R. § 404.1545(a)(1)) (internal quotations and alterations omitted). The claimant bears the burden of demonstrating the inability to return to past relevant work. *See Plummer*, 186 F.3d at 428.

If the claimant is unable to return to past relevant work, at step five, the Commissioner must demonstrate that the claimant's impairments do not preclude an adjustment to any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g); *Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Id.* The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See id.* The ALJ often seeks the VE's assistance in making this finding. *See id.*

### B. Whether ALJ's Decision is Supported by Substantial Evidence

The focus of Plaintiff's motion for summary judgment is whether the ALJ's mental RFC determination is supported by substantial evidence due to the alleged failure of the ALJ to properly evaluate the opinion of consultative examiner C. Craig Farmer, Ph.D. (D.I. 13 at 11-15) In support of his cross-motion for summary judgment, the Commissioner argues this court should find that the decision rests on application of the proper legal standard and is supported by substantial evidence. (D.I. 15 at 9-12)

An ALJ weighs the evidence before him and has the discretion to make a decision based on the balance of the evidence as "the ALJ is free to rest a finding of no disability on a record overwhelmingly reflecting a non-disabled individual, despite the presence of a few bits of evidence suggesting some medical problems." *Wilson v. Astrue*, 2011 WL 2036673, at *7 (E.D. Pa. May 24, 2011). An ALJ cannot "pick and choose only evidence that favors his adverse decision." *Bohizic v. Comm'r of Soc. Sec.*, 2008 WL 5378277, at *4 (W.D. Pa. Dec. 23, 2008); *see also Dunson v. Comm'r Soc. Sec.*, 615 Fed. App'x 65, 69 (3d. Cir. 2015) ("…the ALJ must

consider all relevant evidence in the record…"). Although the ALJ may make credibility determinations when the record contains inconsistent or conflicting evidence, the ALJ "cannot reject evidence for no reason or the wrong reason." *Plummer*, 186 F.3d at 429 (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)).

In accordance with the revised regulatory framework for claims filed on or after March 27, 2017, the ALJ is not required to give any "specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including from a medical source." 20 C.F.R. § 416.920c(a). Instead, the ALJ considers the persuasiveness of all medical opinions based on the application of five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *Id.* at § 416.920c(a)-(c). The ALJ must explain how he considered the most important factors of supportability and consistency. *Id.* at § 416.920c(b)(2). Otherwise, the reviewing court cannot judge whether "significant probative evidence was not credited or if it was simply ignored." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d. Cir. 2001) (quoting *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d. Cir. 2000)). Importantly, the ALJ may not reject a treating physician's opinion based on "his or her own credibility judgments, speculation, or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

An ALJ has discretion to make a determination regardless of physician opinion. An "ALJ may discount a physician's opinion of disability which is not supported by medical evidence, or may reject a physician's opinion outright if it is contradicted by other medical evidence." *Springer v. Comm'r Soc. Sec.*, 2021 WL 4796379, at *2 (3d. Cir. Oct. 14, 2021). Additionally, parity between physician and the ALJ is not a requirement as shown in *Titterington v. Barnhart*, which states, "[t]here is no legal requirement that a physician have made the

14

particular findings that an ALJ adopts in the course of determining an RFC." 174 Fed. App'x. 6, 11 (3d Cir. 2006); *see also Foux v. Saul*, 530 F. Supp. 3d 522, 524 (M.D. Pa. Mar. 30, 2021) (commenting "the RFC assessment is the exclusive province of the ALJ and not the province of treating physicians or other medical providers").

Here, Plaintiff argues that the ALJ improperly relied on "benign examination findings" in determining Dr. Farmer's opinion is not "entirely persuasive." (D.I. 13 at 13-14) Plaintiff avers Dr. Farmer's opinion is "highly supportive and consistent with the record." (*Id.* at 14) In making this argument, Plaintiff cites select visits with RN Cooper where "she could not get her emotions under control." (*Id.*) However, Plaintiff is simply choosing evidence which supports her point of view. The exam findings speak for themselves regardless of how the Plaintiff characterizes them. While Plaintiff may disagree with the ALJ's conclusion on the persuasiveness of Dr. Farmer's opinion, the ALJ has the discretion to interpret the evidence. *See Scouten v. Comm'r of Social Sec.,* 722 Fed. App'x 288, 291 (3d Cir. 2018) (noting "the ALJ . . . must make the ultimate disability determinations"). In making those determinations, the ALJ must explain his reasoning. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The court finds the ALJ *did explain* his reasoning for finding Dr. Farmer's opinion not entirely persuasive:

> Dr. Farmer opined [Plaintiff's] ability to tolerate stress and pressure associated with day-to-day work activity is limited. I find Dr. Farmer's opinion not entirely persuasive because the conclusion regarding ability to tolerate work stress and pressure from day-to-day work activities is not supported by the exam or consistent with other treatment records. For example, the claimant was able to drive to the exams and had full range affect even during exams with a stranger. Moreover, exams that are more recent revealed she had normal insight, appropriate judgment, and normal memory.

(D.I. 9 at 33) (internal citations omitted) The court will not impose its own judgment regarding the ALJ's findings. *See Zirnsak,* 777 F.3d at 611.

In situations when a court has remanded for failure to substantially evaluate the evidence, it has been because the ALJ did not explain why he or she rejected a physician's opinion. *See e.g., Simmonds v. Astrue,* 872 F. Supp. 2d 351, 359 (D. Del. 2012) (finding "the ALJ did not sufficiently set out the analysis required to decide how much weight to give [medical doctor's] opinion"); *Dass v. Barnhart,* 386 F. Supp. 2d 568, 577 (D. Del. 2005) (stating an ALJ opinion that "merely states that [the medical doctor's] report is inconsistent substantial evidence" is insufficient to provide an adequate basis for rejecting the evidence); *Bohizic*, 2008 WL 5378277 at *5 (remanding because "the ALJ . . . failed to acknowledge the portion of [the doctor's] treatment notes . . . which do support [p]laintiff's claim of disability"). This is not the situation here because the ALJ did explain its reasoning for disregarding Dr. Farmer's opinion, as discussed above, and there was support for his decision from other medical opinions. (*See e.g.*, D.I. 9 at 32-34, discussing Dr. Singh's, Dr. Tessler's, and Dr. Barham's opinions) Further, the ALJ considered evidence supporting Plaintiff's disability. The ALJ in this case, acknowledges "[t]he claimant has had difficulty dealing with emotions and grief following the loss of her two sons." (*Id.* at 28) Yet, the ALJ decided it was "no more than a moderate limitation in adapting or managing oneself." (*Id.*) It is undisputed that throughout his review of all examining consultant opinions, the ALJ found the Plaintiff has moderate limitations and incorporated those moderate limitations into his RFC. (*Id.* at 29) Therefore, the ALJ did not pick and choose which evidence to consider, as Plaintiff suggests, nor did the ALJ fail to consider evidence supporting Plaintiff's disability.

Plaintiff further asserts the ALJ improperly focused on opinions from examinations done in a controlled environment. (D.I. 13 at 13-14) To buttress the point, Plaintiff cites this court's decision in *Travisano v. Astrue*, which said "[a statement that Plaintiff's] 'ability to

16

function is seriously impaired or nonexistent in every area related to work shall not be supplanted by an inference gleaned from treatment records reporting on the claimant in an environment absent of the stresses that accompany the work setting.'" 2013 WL 1776158, at *7 (D. Del. Apr. 25, 2013) (quoting *Morales*, 225 F.3d at 319). Plaintiff correctly points out our appellate court has explained "the work environment is completely different from a home or a mental health clinic," and a doctor's observation of a patient during treatment may not reflect how the patient interacts elsewhere. *Morales*, 225 F.3d at 319. Yet, here, the ALJ did not confine his ruling to evidence from controlled environments, i.e. medical opinions from examinations. For example, the ALJ took into consideration non-exam settings like Plaintiff's ability to "go out alone, [go] grocery shopping, and attend[] church." (D.I. 9 at 28)

Dr. Farmer's characterization of the capabilities of Plaintiff and the finding of the ALJ are distinguishable from this court's holding in *Travisano* because there the ALJ's impression of the claimant's testimony affected his decision stating, "Travisano was able to answer questions, drive, groom himself, complete housekeeping tasks, pursue hobbies and stated the reason he stopped working two years prior to the alleged onset date was to care for his mother. This testimony diminished Travisano's credibility..." *Travisano*, 2013 WL 1776158, at *8 (internal citation omitted). In the present case, Dr. Farmer's report notes that Plaintiff "states that she is able to bathe herself, take care of hygiene needs, dress herself, drive an hour, and handle her own finances." (D.I. 9 at 615) This finding coincides with the ALJ's finding:

> the record supports moderate limitations in each of the four broad mental areas. The residual functional capacity limitations to simple, routine and repetitive work, but not at a production pace, and simple work decisions in a stable environment take into account the areas of understanding, remembering, or applying information, concentrating, persisting, and maintaining pace, and adapting or managing oneself.

17

(*Id.* at 32) The reasoning for denying benefits in *Travisano* is distinguishable from the present case in which the ALJ "fully considered the medical opinions and prior administrative medical findings…" and determined "the consultants opined the claimant is capable of performing, simple, routine tasks." (*Id.* at 33-34) Because the bar for sufficiency of evidence is "not high[,]" the ALJ's consideration of this evidence satisfies the substantial evidence standard. *See Biestek*, 139 S. Ct. at 1154.

## IV. CONCLUSION

The ALJ included restrictions in the RFC consistent with the pertinent mental health treatment and evaluation records limiting Plaintiff to simple work decisions in a stable work environment with relatively little change in work setting or work process. Substantial evidence supports the ALJ's decision. For the foregoing reasons, Plaintiff's motion for summary judgment (D.I. 12) is DENIED and Commissioner's cross-motion for summary judgment (D.I. 14) is GRANTED. An Order consistent with this Memorandum Opinion shall issue.

Dated: October 7, 2022

Sherry R. Fallon
United States Magistrate Judge